IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JONATHAN T. WAGONER                                                              PLAINTIFF

v.                              Civil No. 09-3076

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jonathan Wagoner, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

The plaintiff filed his application for DIB on February 12, 2007, alleging an onset date of February 6, 2007, due to degenerative disk disease of his lower back; status post comminuted fracture to his right foot; mood disorder; anxiety disorder; and, shoulder, elbow, and wrist pain. Tr. 9, 122, 161, 176-178, 204, 210, 235, 272-274. The Agency denied his application initially and on reconsideration. Tr. 9, 91, 96.

An administrative hearing was held on December 2, 2008. Tr. 21-73. Plaintiff was present and represented by counsel. At this time, plaintiff was 49 years of age and possessed a high school education. Tr. 25, 29. He had past relevant work ("PRW") experience as a farm worker, dump truck driver, motor grader operator, and fiberglass boat manufacturer. Tr. 19, 25.

On April 17, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disk disease, status post comminuted fracture of the right foot, mood disorder, and anxiety disorder did not meet or equal any Appendix 1 listing. Tr. 11-13. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform light work involving only incidental interpersonal contact with others. Tr. 13-19. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as a small parts assembler, inspector, or sorter. Tr. 19-20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 27, 2009. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 9, 10.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence,

and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    A.    <u>**The Evaluation Process**</u>:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

AO72A
(Rev. 8/82)

**III.     Discussion**:

Of particular concern to the undersigned is the RFC assigned by the ALJ. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The evidence reveals that Plaintiff suffered a crush injury to his right foot in 1999 for which he underwent surgery and physical therapy. Tr. 33, 37, 326-341, 387-395, 398-420. His foot was crushed to the point he no longer had a natural arch support and had to wear a special shoe with an orthopedic arch support. Tr. 487-493. It does not, however, appear that his was taken into consideration in the ALJ's RFC assessment, which contains no standing or walking limitations.

4

In addition, Plaintiff testified that he was involved in a motor vehicle accident in 2000, in which he hurt his neck and back. Tr. 36-37, 422-438. Initially, testing revealed a very small posterolateral paraforaminal disk herniation on the right of the C6-7 vertebra and degenerative disk changes at the C4-5 and C6-7 levels with mild right C6-7 level neuroforaminal narrowing from spurring. Tr. 333. An MRI of his spine conducted in February 2006 revealed abnormal a disk bulge/protrusion of disk material at the L4-5 level. Tr. 459-460. X-rays also showed spondylosis. Tr. 548. A CT of his lumbar spine performed in June 2006 evidenced degenerative changes at the L4-5 and L5-S1 levels, broad based disk bulges at these levels, and left lateral stenosis and bilateral neural foraminal narrowing at the L4-5 level. Tr. 484-485. Further, a general physical exam conducted in 2007 revealed a limited range of motion in his lumbar spine and noted mid-tarsal joint fusion in the right foot. Tr. 487-493

From a mental perspective, the evidence also indicated that Plaintiff had been diagnosed with both depressive disorder, panic disorder, and anxiety disorder. He reported a depressed mood, a lack of energy, difficulty sleeping, panic attacks, difficulty concentrating, frustration, and irritability. In May 2007, Dr. Nichols assessed Plaintiff with a global assessment of functioning ("GAF") score of 47 and found marked interference with his ability to perform activities of daily living. Tr. 504-508. Various medical records from Plaintiff's treating psychiatrist, Dr. Christopher Winslow, indicate that he had diagnosed Plaintiff with major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder and assessed him with a GAF of 49. Treatment notes document that Plaintiff attended appointments with Dr. Winslow on a monthly basis and tried several anti-depressant/anti-anxiety medications to combat his illnesses, but met with little long-term treatment success. Tr. 537-547, 591-624,

699-729. Many of the medications had intolerable side effects, such as increased fatigue and sedation, or merely lost their effectiveness within a few months of treatment.

On December 9, 2008, Plaintiff was evaluated by Dr. Vann Smith, who diagnosed Plaintiff with cognitive dysfunction, mood disorder, anxiety disorder, and chronic pain syndrome. Tr. 630-639. He assessed Plaintiff with a GAF of 30-35. Dr. Smith concluded Plaintiff would be unable to meet competitive standards with regard to remembering work-like procedures; maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary usually strict tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; understanding, remembering, and carrying out detailed instructions; setting realistic goals or make plans independently of others; and, dealing with the stress of semiskilled and skilled work. He also found Plaintiff was seriously limited but not precluded from understanding, remembering, and carrying out short and simple instructions; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stresses; being aware of normal hazards and taking appropriate precautions; interacting appropriately with the general public; maintaining socially appropriate behavior; traveling in unfamiliar places; and,

using public transportation. Dr. Smith indicated that Plaintiff would likely miss more than four days per month of work due to his symptoms and treatment. Tr. 630-639, 734-744.

On December 16, 2008, Dr. Winslow completed a mental RFC assessment. Tr. 641-653, 745-751. He indicated that he had treated Plaintiff since May 21, 2007, on a monthly basis. Dr. Winslow assessed Plaintiff with a GAF of 50, stating that he had tried several medications with only partial responses and remained symptomatic and impaired. He noted that Plaintiff presented with chronic constriction of affect, anergia, and negativistic anxiety. Plaintiff's prognosis was documented to be fair. Dr. Winslow was of the opinion that Plaintiff would be unable to meet competitive standards with regard to maintaining regular attendance and being punctual within customary and usually strict tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms; and, performing at a consistent pace without an unreasonable number and length of rest periods. He also found Plaintiff's ability to maintain attention for two hour segments; deal with normal work stress; carry out detailed instructions; set realistic goals or make plans independently of others; and, deal with stress of semiskilled and skilled work to be seriously limited, but not precluded. Dr. Winslow was also of the opinion that Plaintiff would likely miss more than four days of work per month due to his impairments and treatment. Tr. 641-653, 745-751.

The ALJ determined Plaintiff could perform light work involving only incidental interpersonal contact with others. However, given Plaintiff's foot impairment and the bulging disks in his back, we do not find substantial evidence to support this RFC assessment. It seems clear to the undersigned that an individual with the residuals of a foot injury on this level, herniated disks, and degenerative disk disease would have some limitations with regard to

climbing, balancing, kneeling, crawling, sitting, walking, and standing. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). As such, we believe that remand is necessary to allow the ALJ to reevaluate Plaintiff's RFC.

As the evidence also indicates that Plaintiff was suffering from anxiety and depression to the extent that his treating and two consultative doctors assessed him with a GAF score in the 41-49 range, which is indicative of serious symptoms or a serious impairment in social, occupational, or school functioning, we believe remand is also necessary to allow the ALJ to re-evaluate Plaintiff's mental RFC. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000). We note that the ALJ chose to dismiss Dr. Winslow's RFC assessment, mainly on the basis that Plaintiff reported being able to fish more and work in his garden in June 2008. However, the ALJ is reminded that the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the

requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds). Given Plaintiff's history of limited response to medication and treatment, we simply do not find that his ability to fish or perform some limited garden work for a short period of time constituted substantial evidence upon which to negate his overall symptomology and render him capable of returning to work. Therefore, on remand, the ALJ is advised to reconsider Dr. Winslow's RFC assessment in conjunction with his treatment notes documenting Plaintiff's very limited progress and response to medication.

**IV. Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 3rd day of March 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)